UNITED STATES of America

v.

CLINICAL LEASING SERVICE, INC., et al.

Civ. A. No. 89–3041.

United States District Court, E.D. Louisiana.

Feb. 15, 1990.

See also 925 F.2d 120.

311

Thomas Landers Watson, U.S. Attorney's Office, New Orleans, La., for plaintiff.

Lawrence Blake Jones, Schevermann & Jones, New Orleans, La., for Clinical Leasing Service, Inc., d/b/a Delta Womens Clinic, Inc. d/b/a Delta Women's Clinic and Delta Women's Clinic, Inc., Roy Claude Wood, Jr., M.D. and Richardson B. Glidden, M.D.

William F. Wessel, Wessel, Bartels & Ciaccio, New Orleans, La., for Kiat Varnishung.

## ORDER AND REASONS

DUPLANTIER, District Judge.

Before the court is a motion for partial summary judgment filed on behalf of the plaintiff, United States of America, against "defendants Clinical Leasing Service, Inc., Delta Women's Clinic, Kiat Varnishung, Roy Claude Wood, Jr., and Richardson B. Glidden," and a motion for summary judgment filed on behalf of "defendants, Clinical Leasing Service, Inc., d/b/a Delta Women's Clinic (the clinic), Richardson B. Glidden, M.D., and Roy Claude Wood, Jr., M.D."[1] For the following reasons, the defendants' motion is DENIED, and the government's motion is GRANTED.

## MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

On August 22, 1988, Drug Enforcement Administration investigators received information that controlled substances were being dispensed from Delta Women's Clinic,

1. The pleadings cause confusion as to the proper designation of the corporate defendant(s). The supplemental complaint lists two corporations; the motion for partial summary judgment refers to the defendants in the manner we quote. There is no pleading filed on behalf of "Delta Women's Clinic, Inc." We refer to the owner(s) of the clinic as "clinic"; the confusion can be clarified before judgment is entered.

located at 1406 St. Charles Avenue, New Orleans, Louisiana. On that date, no physician or other person was registered to dispense controlled substances from that location.

On August 24, 1988, DEA investigators visited the clinic and warned the office manager, Toni Scott, and the clinic coordinator, Betty Lou Ward, that in order to dispense controlled substances the clinic must have a practitioner registered with the DEA at that location. The investigators provided them with a registration application and copies of the pertinent provisions of the Code of Federal Regulations.

On December 2, 1988, DEA investigators returned to the clinic to interview Dr. Kiat Varnishung and Ms. Scott regarding Dr. Varnishung's pending application for registration to dispense controlled substances at the clinic address. At this meeting, the investigators reviewed the pertinent federal regulations with Dr. Varnishung and Ms. Scott. Ms. Scott was warned to include the addresses of the patients in the clinic's drug log.

On March 16, 1989, Dr. Roy Claude Wood, Jr. became registered to dispense controlled substances at the clinic address, 1406 St. Charles Avenue.

On May 10 and 12, 1989, DEA compliance investigators conducted a follow-up investigation at the clinic. This investigation revealed numerous instances in which controlled substances had been dispensed from the clinic between August 24, 1988 (the date of the first warning) and March 16, 1989 (the date of Dr. Wood's registration). This investigation also revealed that even after registration, the clinic's drug log did not contain the addresses of each of the patients to whom controlled substances were dispensed. However, most of the addresses could be obtained by reviewing all the patient records.

During the course of the follow-up investigation, it was discovered that Dr. Wood had obtained thirty-eight tablets of Diazepam (Valium) by issuing a prescription to Toni Scott. Dr. Wood admitted that the Valium was not for Ms. Scott, nor was she under his professional care. Dr. Wood stated that he obtained the Valium in order to dispense it to patients at the clinic. Twenty-two of the thirty-eight Valium tablets remained in the bottle; they were seized by DEA.

The government instituted the present litigation against the clinic and the three doctors associated with the clinic, seeking civil penalties for violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* Specifically, the clinic and the doctors are charged with having violated the Act by refusing or failing to make, keep or furnish records required by law. The doctors are also charged with failure to properly register to dispense controlled substances at the clinic. Finally, Dr. Wood is charged with illegally issuing the prescription for Valium to Toni Scott.

We now address the legal issues involved in each of the charges against each defendant.

### THE CLINIC

#### COUNT 7(a)

In Count 7(a), the government alleges that on one hundred occasions between August 24, 1988 and March 16, 1989, while the clinic was not registered with the DEA to dispense controlled substances from 1406 St. Charles Avenue, controlled substances were in fact dispensed from that location without record keeping required by law.

█ The clinic is not charged with failing to obtain a registration; indeed, only physicians may do so. The clinic is charged with failure to maintain proper records. The law clearly requires every "person" (including a corporation) to maintain proper records if that person dispenses controlled substances. By employing physicians to dispense drugs in connection with its operation, the clinic is a dispenser of controlled substances. Therefore, the clinic, as well as the physicians it employs, must maintain the proper records required by law.

Congress has made it "unlawful for any person—to refuse or fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement,

invoice, or information required...." 21 U.S.C. § 842(a)(5).

The records must contain such relevant information as may be required by the regulations of the Attorney General and must be made available for inspection by designated government officers or employees:

Every inventory or other record required under this section (1) shall be in accordance with, and contain such relevant information as may be required by, regulations of the Attorney General, (2) shall (A) be maintained separately from all other records of the registrant, or (B) alternatively, in the case of non-narcotic controlled substances, be in such form that information required by the Attorney General is readily retrievable from the ordinary business records of the registrant, and (3) shall be kept and available, for at least two years, for inspection and copying by officers or employees of the United States authorized by the Attorney General.

21 U.S.C. § 827(b).

Additionally, 21 C.F.R. § 1304.24 sets forth exactly what records and information must be kept and be made available for inspection by the DEA. It provides:

Each person registered or authorized (by § 1301.22(b) of this chapter) to dispense or conduct research with controlled substances and required to keep records pursuant to § 1304.03 shall maintain records with the following information for each controlled substance:

(a) The name of the substance;

(b) Each finished form (e.g., 10–milligram tablet or 10–milligram concentration per fluid ounce or milliliter) and the number of units or volume of finished form in each commercial container (e.g., 100–tablet bottle or 3–milliliter vial);

(c) The number of commercial containers of each such finished form received from other persons, including the date of and number of containers in each receipt and the name, address, and registration number of the person from whom the containers were received;

(d) The number of units or volume of each finished form dispensed, including the name and address of the person to whom it was dispensed, the date of dispensing, the number of units or volume dispensed, and the written or typewritten name or initials of the individual who dispensed or administered the substance on behalf of the dispenser; and

(e) The number of units or volume of such finished forms and/or commercial containers disposed of in any other manner by the registrant, including the date and manner of disposal and the quantity of the substance in finished form disposed.

The clinic contends that it was not required to maintain records, arguing that the record keeping requirements pertain only to "registrants." Since it was not a "registrant," it was not required to keep records.

■ However, 21 U.S.C. § 842(a)(5), the statute under which the clinic is charged, does not require that one who refuses or fails to make, keep, or furnish records be a "registrant." On the contrary, 21 U.S.C. § 842(a)(5) provides that "[i]t shall be unlawful for *any person* to refuse or fail to make, keep, or furnish" records. [emphasis added]. 21 C.F.R. § 1301.02(j) defines "person" as "any individual, corporation, government or governmental subdivision or agency, business trust, partnership, association, or other legal entity."

In order to monitor the flow of controlled substances within the United States, Congress made it unlawful for *"any person"* to either refuse or fail to make, keep or furnish records. Congressional intent is clear upon review of the other provisions of § 842(a). 21 U.S.C. §§ 842(a)(2) and (3) provide:

It shall be unlawful for any person—

*   *   *   *   *   *

(2) who is a registrant to distribute or dispense a controlled substance not authorized by his registration to another registrant or other authorized person or to manufacture a controlled substance not authorized by his registration;

(3) who is a registrant to distribute a controlled substance in violation of section 825 of this title.

Had Congress intended to limit the applicability of § 842(a)(5) to registrants only, it would have done so, as it did in §§ 842(a)(2) and (3). *See United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975).

### COUNT 7(b)

In Count 7(b), the government charges that from March 16, 1989 until May 10, 1989, a period during which a physician was registered to dispense controlled substances at the clinic, the clinic failed to include in its drug log the addresses of the individuals to whom controlled substances were administered. The government submits that although this occurred on hundreds of occasions, it chose to charge a single violation for each of the thirty-seven pages of the drug log which omit the addresses of the patients.

21 C.F.R. § 1304(d) requires that:

Each person registered or authorized (by § 1301.22(b) of this chapter) to dispense or conduct research with controlled substances and required to keep records pursuant to § 1304.03 shall maintain records with the following information for each controlled substance:

\*      \*      \*      \*      \*      \*

(d) The number of units or volume of such finished form dispensed, including the name and *address* of the person to whom it was dispensed, the date of dispensing, the number of units or volume dispensed, and the written or typewritten name or initials of the individual who dispensed or administered the substance on behalf of the dispenser. [emphasis added].

The records (including the address of the person to whom a controlled substance was dispensed) must either be maintained separately from all other records of the registrant or be in such form that the required information is readily retrievable from the ordinary business records of the registrant. 21 U.S.C. § 827(b).

According to the uncontroverted affidavit of DEA investigator Ira Wald, the clinic had a system whereby each patient was assigned a number upon entry into the clinic. The patient files were maintained sequentially by these numbers. The drug log did not contain the numbers but, rather, the names of the patients. Therefore, in order to retrieve the patients' addresses, all the files had to be reviewed. By maintaining this system, the clinic violated the requirements in 21 U.S.C. § 827(b) that it keep the addresses of patients to whom controlled substances were administered separate, or readily retrievable.

### DRS. WOOD, VARNISHUNG AND GLIDDEN

### COUNTS 7(c), (d) and (e)

In Counts 7(c), (d) and (e), the government alleges that Drs. Wood, Varnishung and Glidden, respectively, dispensed specified controlled substances from the clinic without being registered to do so, and that they failed to maintain required records as to these activities.

Specifically, in Count 7(c), the government claims that on seven dates (54 different times) in February, 1989, Dr. Wood, who was registered to dispense controlled substances only at 223 Fernwood Drive, Baton Rouge, Louisiana, dispensed controlled substances at the clinic, contrary to his registration. In Count 7(d), the government claims that on thirty-nine dates (67 different times) between September 6, 1988 and January 27, 1989, Dr. Varnishung, who was registered to dispense controlled substances only at 3480 St. Claude Avenue, New Orleans, Louisiana and 3040 Ridgelake Drive, Metairie, Louisiana, dispensed controlled substances at the clinic, contrary to his registration. In Count 7(e), the government claims that on three dates (13 different times) in February, 1989, Dr. Glidden, who was registered to dispense controlled substances only at 4829 Bennington Avenue, Baton Rouge, Louisiana, dispensed controlled substances at the clinic, contrary to his registration.

The government contends that these activities of the doctors constitute a violation of 21 U.S.C. § 842(a)(2):

(a) It shall be unlawful for any person—
(2) who is a registrant to distribute or dispense a controlled substance not authorized by his registration to another registrant or other authorized person or to manufacture a controlled substance not authorized by his registration.

It is undisputed that while the three doctors were registered to dispense controlled substances at other locations, they were not registered to do so at the clinic.

21 U.S.C. § 822(e) states, "A separate registration shall be required at each principal place of business or professional practice where the applicant manufactures, distributes, or dispenses controlled substances." Additionally, 21 C.F.R. § 1301.23(a) provides:

(a) A separate registration is required for each principal place of business or professional practice at one general physical location where controlled substances are manufactured, distributed or dispensed by a person.

■ The doctors argue that they were not required to register to dispense controlled substances at the clinic, contending that the clinic was not a "principal place of business." The record proves otherwise.

Dr. Varnishung, in his affidavit, stated that during the period of the allegations contained in the complaint (approximately five months), he worked approximately eight hours per week at the clinic. The complaint charges and the government has proved that on thirty-nine days during that period, he dispensed or administered controlled substances sixty-seven different times. Dr. Wood, in the agreement between him and the clinic, dated February 8, 1989, the date of the first charge against him, agreed to perform "all of his medical services" at the clinic and to be "on call" as needed when in New Orleans, for a period of fifty weeks per year. The complaint charges and the government has proved that on seven dates in his first month at the clinic, Wood dispensed or administered controlled substances fifty-four different

times. Dr. Glidden stated in his deposition that in three of the last four years, he earned between $8,000 and $11,000 from procedures performed at the clinic. The complaint charges and the government has proved that on three days in February, 1989, he dispensed or administered controlled substances thirteen different times. We conclude from these undisputed facts that each of these defendants "regularly engage[d] in the dispensing or administering of controlled substances" at the clinic.

■ The legislative history of the Controlled Substances Act provides that "all persons engaged in the legitimate distribution chain involving drugs ... must be registered with the Attorney General." 1970 U.S.Code Cong. & Admin.News, 91st Cong. 2nd Sess., 4566, 4589. The statutes and the regulations give effect to this Congressional policy. It was clearly not the intent of Congress to permit a physician to designate one or two offices as his principal places of business and then regularly dispense controlled substances from other locations without any supervision by the DEA.

We give the phrase "each principal place of business," as it is used in 21 U.S.C. § 822(e) and 21 C.F.R. § 1301.23(a) a fair meaning in accordance with the intent of Congress; we conclude that the clinic was a "principal place of business" for all three of the defendant physicians.

■ As noted above, the government also contends that in dispensing drugs at the clinic the individual defendants violated the record-keeping requirements of 21 U.S.C. § 842(a)(5). That statute provides, "It shall be unlawful for any person—to refuse or fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required under this subchapter or subchapter II of this chapter." It is undisputed that the defendants did not make, keep or furnish the required records.

21 U.S.C. § 827(c)(1)(B) provides that the record keeping requirements shall not apply:

(B) to the administering of a controlled substance in schedule II, III, IV, or V

unless the practitioner regularly engages in the dispensing or administering of controlled substances and charges his patients, either separately or together with charges for other professional services, for substances so dispensed or administered or unless such substance is administered in the course of maintenance treatment or detoxification treatment of an individual.

Defendant physicians cannot seriously claim that they did not "regularly" dispense or administer controlled substances. Their contention is that at the clinic their patients were not charged, directly or indirectly, for the drugs administered.

The records of the clinic demonstrate that defendants were charging patients for the controlled substances. Each patient who received a controlled substance paid for professional services. Whether the patients were charged separately for the substances or whether they paid a flat fee for professional services, which included the price of the controlled substance administered, is of no moment. Both situations are covered in the statute.

Defendants suggest that when Dr. Wood began practicing at the clinic, the patients ceased to be charged separately for the controlled substances. However, the affidavits show that each patient was charged the same amount whether or not they received controlled substances, and most of the patients did receive controlled substances. The charge for the controlled substance, whether or not it was used, was included together with the charges for the professional services. For the doctors to suggest that the patients were not charged for the controlled substances is absurd. The clinic was certainly not dispensing free medication.

It should be noted that Dr. Varnishung argues that the government is aware of other physicians who register at one or two locations and dispense controlled substances at other locations where they are not registered to do so. Dr. Varnishung claims that the doctors herein are the only physicians (despite the government's knowledge that other physicians operate in the same or similar fashion) against whom the government has sought to enforce the provisions of the Controlled Substances Act.

■ The decision of the government to file suit against one person instead of another is a proper exercise of executive discretion. *See Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Hoover,* 727 F.2d 387 (5th Cir.1984).

## COUNT 7(f)

■ In Count 7(f), the government alleges that Dr. Wood issued a prescription for thirty-eight dosage units of Diazepam (Valium) to Toni Scott, the Clinic's office manager, not in the usual course of professional treatment and with knowledge that she was not to be the ultimate user of the drug, in violation of 21 U.S.C. § 842(a)(1) and 21 U.S.C. § 829(b).

21 U.S.C. § 842(a)(1) provides, "It shall be unlawful for any person—who is subject to the requirements of part C to distribute or dispense a controlled substance in violation of section 829 of this title."

21 U.S.C. § 829(b) provides, in pertinent part:

(b) Except when dispensed directly by a practitioner, other than a pharmacist, to an ultimate user, no controlled substance in schedule III or IV, which is a prescription drug as determined under the Federal Food, Drug, and Cosmetic Act, may be dispensed without a written or oral prescription in conformity with section 503(b) of that Act.

The regulation promulgated pursuant to § 829 provides, in pertinent part:

(a) A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and au-

thorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04.

Dr. Wood admitted to Investigator Ira Wald that the Valium was not for Ms. Scott, nor was she under his professional care. Dr. Wood indicated that he obtained the Valium by writing a prescription to Ms. Scott in order to dispense the drug to patients at the clinic. The regulations expressly prohibit such activity. 21 C.F.R. § 1306.04(b) provides, "A prescription may not be issued in order for an individual practitioner to obtain controlled substances for supplying the individual practitioner for the purpose of general dispensing to patients."

## CONCLUSION

The clinic is liable for civil penalties for each of the incidents alleged in Count 7(a) of the complaint. The clinic is also liable for the thirty-seven instances in which it failed to include the addresses of patients in the drug log, as alleged in Count 7(b). Drs. Wood, Varnishung and Glidden are liable for each of the incidents alleged in Counts 7(c), (d) and (e) of the complaint. Finally, Dr. Wood is liable for the prescription written to Ms. Scott. (Count 7(f)).

An order will be entered granting partial summary judgment on the issue of liability in favor of plaintiff and against defendants on each count of the complaint. As a result, trial on March 14, 1990 will be before the court, without a jury, to assess civil penalties. *See Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).