**UNITED STATES of America,**

**v.**

**Roland O. STIDHAM, Defendant.**

**No. 95–0438–CB–C.**

United States District Court,
S.D. Alabama,
Southern Division.

Aug. 16, 1996.

Eugene A. Seidel, Mobile, AL, for U.S.

Roland O. Stidham, Mobile, AL, pro se.

## OPINION AND ORDER

BUTLER, Chief Judge.

This matter is before the Court on a motion for partial summary judgment filed by plaintiff in this action, the United States of America (doc. 52). Defendant, who is proceeding *pro se* has filed several pleadings within the time period for response which might be considered as responses to the government's motion. After reviewing all relevant pleadings and other evidence on file in light of the applicable law, the Court finds that the government's motion is due to be granted.

### Findings of Fact

Martin C. Riley and Linda Traub, Diversion Investigators with the Drug Enforcement Administration ("DEA"), were at all relevant times assigned to the Mobile Resident Office and were authorized to enforce the Controlled Substances Act of 1970 and the Chemical Diversion and Trafficking Act of 1988. Their responsibilities included regulatory investigations of legitimate drug handlers to ensure compliance with the Controlled Substance Act, the Narcotic Addict Treatment Act and implementing regulations, including audits and investigations to detect criminal diversion by registrants, which included regulation of methadone clinics.[1]

On or about November 1989, the Mobile Resident Office received a New Application for Registration under Narcotic Treatment Act of 1974, DEA Form 363, for maintenance and detoxification, document number D275043019. The name of the program applying was Gulf Coast Drug Control Center ("the clinic"), 1159 Spring Hill Ave, Mobile, Alabama 3604, and the application was signed by Edmond Henson, M.D., with telephone number 205–433–2111. Pursuant to the application, Agent Riley called the telephone number to begin the pre-registration. The telephone was answered by a person who identified himself as R.O. Stidham, the defendant in this case. Stidham informed Agent Riley that he was the program sponsor and was financing the program and providing the building. He also told Riley that Dr. Henson wanted Stidham to take care of the registration process and security system.

Prior to August 1990, Agent Riley made at least two on-site visits to the 1159 Spring Hill address, and on both occasions he was met by Mr. Stidham, who was the clinic's primary contact person. Prior to August 1990, Riley may also have talked to Dr. Henson by telephone one or two times. During this time, Mr. Stidham told Riley that he and Dr. Henson were the business owners and that Dr. Ronald Walker, a practicing psychiatrist was the program's coordinator.

On August 2, 1990, Diversion Investigator Wayne Michaels from the New Orleans Field Division, and Riley met with Dr. Henson and Mr. Stidham to conduct a pre-registration inspection of the site. Mr. Stidham showed Investigators Michaels and Riley the building and identified the alarm system and devices, which upon inspection were found to be inadequate. The program also failed to have written procedures and policies for the intake of patients or for the dispensing of methadone. Before terminating the inspection, Agent Riley advised Dr. Henson of the security and record keeping requirements under Title 21, Code of Federal Regulations, sections 1301 and 1304. Dr. Henson told Riley he understood the responsibilities and that he was employing Benjamin Bowles as the program's director. Henson said Bowles was a registered nurse who was employed by Gateway Treatment Program and NTP (Narcotics Treatment Program) located in Mobile.

On December 10, 1990, Investigators Michaels and Riley conducted a second on-site pre-registration inspection at the Gulf Coast

---

1. Methadone is a Schedule II controlled substance. 21 U.S.C. § 812(c), Schedule II(b)(11) and 21 C.F.R. § 1308.12(c).

Drug Control Center facility. They met with Dr. Henson and Benjamin Bowles. Dr. Henson provided them with copies of the facility's policy and procedures manual, client's manual, and clients consent form. Agents Riley and Michaels again explained the record keeping requirements to Dr. Henson. Dr. Henson advised Riley that for emergency purposes he was giving Dr. Walker and Mr. Bowles Power of Attorney to sign the order forms, DEA Form 222, for the methadone. Pursuant to the inspection they again checked the security and alarm system, which appeared to meet the DEA requirements. Mr. Stidham was at the site during the second pre-registration inspection. On December 11, 1990, the Mobile Resident Office approved Gulf Coast Drug Control's application.

After the program became registered, Mr. Stidham made numerous telephone calls to Agent Riley regarding the clinic. Mr. Stidham's questions and conversations often concerned patient care which is regulated by the U.S. Food and Drug Administration. Mr. Stidham wanted to do blood testing to check for methadone and other drugs instead of doing urinalysis. Riley was under the impression that Mr. Stidham was concerned about laboratory costs for the urine tests. In one specific conversation, Mr. Stidham said he wanted to sell methadone to individuals as an alternative to their buying illicit drugs like marijuana and cocaine on the street. He said he felt that it would reduce the danger of contaminated drugs and crime. Riley told Mr. Stidham that the clinic could only provide methadone for the treatment of opiate addiction, and that if he or anyone else at the clinic sold or gave methadone to anyone for any other reason, it would be illegal.

Riley also received telephone calls from Mr. Stidham in reference to his son R.L. Stidham. Mr. Stidham wanted to employ R.L. Stidham at the clinic. Riley told Mr. Stidham that the clinic could not employ anyone who would have access to the controlled substances if that person was an addict or if they had a drug related conviction. Mr. Stidham asked Riley if R.L. could work at the clinic as a counselor provided that he did not have access to the methadone. Riley advised Stidham that based on the regulations, R.L. Stidham could be employed in that capacity but that it would not be advisable due to R.L. Stidham's current enrollment in a methadone treatment program for drug addiction and his criminal history. Riley later received a telephone call from Dr. Henson about employing R.L. Stidham as a counselor. Dr. Henson said Mr. Stidham wanted to employ R.L. Stidham at the clinic. Riley cautioned Dr. Henson about access to the controlled substances by R.L. Stidham and about his drug addiction and criminal history. Dr. Henson said he was aware of R.L. Stidham's background but that Mr. Stidham was pushing to have his son employed at the clinic.

At all relevant times, Dr. Edmond C. Henson, M.D. was the Medical Director at Gulf Coast Drug Control Center. He became involved in the clinic through Roland O. Stidham, a chiropractor, who contacted Henson in order to find out whether Henson would be interested in participating in a methadone treatment center. Stidham indicated that he would provide a building, the equipment and the necessary financing.

Henson agreed to become the clinic's medical director. Over a period of time, Henson attempted to negotiate a written agreement with Stidham over Henson's salary and interest in the clinic, but failed to do so. Henson filled out the DEA application. The application for FDA approval of the clinic was signed by three persons, including Henson as Medical Director and Stidham as sponsor.

Henson, as Medical Director, was primarily responsible for hiring and firing of the clinic's nurses, and for obtaining and distributing the methadone to the nurses for distribution to the clinic's patients. He was generally in the clinic for only an hour or two each day. Stidham owned and ran the business. He was responsible for the daily operation of the clinic, including finances and banking, control over clerical workers, drug counselors, receptionist, security guard and persons handling money. As noted previously, Stidham provided the building, the equipment and the financing for the clinic.

Six months after the clinic opened, Ben Bowles resigned as the clinic's administrator

due to interference from Stidham. After that, despite Agent Riley's warnings, R.L. Stidham took over many of Bowles's function. At some point during November or December 1991, both Henson and Stidham became aware that drugs and money appeared to be missing from the clinic. Stidham had also received a telephone call from Florida in which he was told that drugs from the clinic were on the street. Nevertheless, Henson and Stidham failed to inform the DEA about the missing drugs and money.

Pursuant to a federal search warrant and court order executed on February 20, 1992, DEA agents seized all records, reports, patient files, receipts, dispensing records and methadone from the Gulf Coast Drug Control Center. Agent Traub analyzed these records and has determined that Gulf Coast did not keep a methadone dispensing log as required by 21 U.S.C. § 842 in violation of 21 C.F.R. § 1304.28(a) and (b). The only records available which reflected the dispensing or methadone for the months of December 1989 through March 1, 1992, were the Patient Pharmacy Charts. These Patient Pharmacy Charts were used to perform an audit, the results of which reflected a shortage of approximately fourteen bottles or 56,-000 milligrams of methadone. Dosages of methadone rarely exceed 100 milligrams; therefore, a minimum of 560 doses were unaccounted for.

Other records obtained pursuant to the search warrant disclosed that Gulf Coast Drug Control Center dispensed approximately 1,687,760 milligrams of methadone. Based on maximum dosage of 100 milligrams, this equates to a minimum of at least 16,877 doses which were not recorded on a daily dispensing log.

Cash receipt records seized from Gulf Coast Drug Control Center reflected payment for methadone by clients. These records were recorded on a hodgepodge of papers, were not maintained in any order and often did not include the date that payment was received. A comparison of receipts, which were maintained by the dosing nurses with the Patient Pharmacy Charts revealed that employees altered dosing cards to reflect that clients came into the clinic to dose and pick up methadone for take home on days other than those days they paid for their doses. At least three Patient Pharmacy Charts reflected that clients were dosed on days after the clinic closed on February 20, 1992. Furthermore, a comparison of the Patient Pharmacy Charts shows that on at least twenty occasions employees altered records to reflect that clients dosed at times other than those recorded on the charts. Based on these records, the DEA determined that employees intentionally altered controlled substances records in violation of 21 U.S.C. § 842 and 21 C.F.R. 1304.28(a) & (b).

Pursuant to the search warrant, all Methadone HCL was seized from the clinic because there was insufficient security in that the owners failed to provide proper security for controlled substances as required by 21 C.F.R. § 1301.72. During service of the search warrant, agents observed several client bottles containing methadone sitting on tables located in the dispensing room area. This methadone was thus not properly secured in the drug safe after hours which allowed for employee pilferage and diversion of the excess methadone.

The owners also failed to notify the DEA of any theft or significant loss of methadone as required by 21 C.F.R. § 1301.74(c) in violation of 21 U.S.C. § 842 in that both R.O. Stidham and Dr. Henson had knowledge of the missing methadone as early as November 1991 and did not report the loss to Agent Traub until after the clinic closed in February 1992. Dr. Henson and R.O. Stidham informed Agent Traub that they had received a call from someone in Florida who told them that methadone wafers were on the street and that these wafers were coming from Gulf Coast Drug Control Center. Dr. Henson also told Agent Traub that he and R.O. Stidham became concerned about missing methadone in November or December 1991 and had someone from outside the clinic review the records and receipts.

The owners thus failed to report drug diversion and other illicit activities by employees as required by 21 U.S.C. § 842 in violation of 21 C.F.R. § 1301.92 in that the owners either knew or suspected that employees were stealing methadone and mon-

ey from the clinic, and their suspicions caused them to place an illegal wiretap on the clinic's telephone.

Further analysis of the records by Agent Traub establishes several additional record keeping violations. A review of these showed that there were seventeen separate shipments of methadone to the clinic. Of the 17 shipments, only 11 DEA Forms 222 (offi-cial order forms) were located at the registered location. These 11 order forms disclosed that Gulf Coast Drug Control Center failed to record on Copy 3 the number of items received and the dates the items were received, as required by 21 U.S.C. § 842 and 21 C.F.R. § 1305.09(e). The order forms located at the clinic and dates executed are as follows:

| Order Form Number | Date |
| --- | --- |
| 902416898 | 12/18/90 |
| 902416899 | 01/24/91 |
| 902416900 | 03/07/91 |
| 902416902 | 05/17/91 |
| 902416908 | 08/22/91 |
| 902416909 | 09/19/91 |
| 902416913 | 11/07/91 |
| 902416914 | 11/25/91 |
| 902416916 | 01/03/92 |
| 902416917 | 01/21/92 |
| 902416918 | 01/10/92 |

Records from Durr Drug Company showed that Gulf Coast Drug Control Center received methadone on the following dates not recorded above: 04/10/91, 06/12/91, 07/11/91, 07/29/91, 10/15/91 and 12/18/91. The clinic failed to maintain order forms for these six shipments at the registered location as required by 21 U.S.C. § 842 and 21 C.F.R. § 1305.13. DEA Headquarters records show that Gulf Coast Drug Control Center was mailed 21 DEA Forms 222 on December 12, 1991. Those order forms are sequentially recorded as 902416898–902416918.

Gulf Coast Drug Control Center also failed to maintain complete and accurate records and inventories of controlled substances dispensed or received as required by 21 U.S.C. § 842 in violation of 21 C.F.R. § 1304.21 in that they could not account for 56,000 milligrams or approximately 560 dosage units of methadone.

## Conclusions of Law

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact[,] it must 'support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response 'come[s] forward with significant probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991)). "In reviewing whether the nonmoving party has met its burden, the court must not weigh the evidence or make credibility determinations and must draw all inferences in favor of the nonmoving party." *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 999 (11th Cir. 1992), *cert. denied*, 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993).

The government has submitted evidence that the Gulf Coast Drug Control Center violated several provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801 *et seq.*[2] Defendant has filed numerous *pro se* pleadings from which the Court has gleaned his defenses to this action. Other than his challenge to the government's proof regarding records of one shipment of methadone, defendant does not dispute that the clinic committed the violations alleged. Instead, his primary defenses to liability are (1) that he is not responsible because he is a layman and had no medical duties at the clinic and (2) that the DEA should have notified the clinic of deficiencies in record keeping. As the government points out, these "defenses" do not rebut the government's evidence, nor do they create an issue of fact as to any of the violations set forth in the complaint.

The Act requires all persons who are involved in the manufacture and/or distribution of controlled substances, whether manufacturers, research establishments, distributors, hospitals, or professionals to: (1) obtain a registration from the Drug Enforcement Administration allowing them to do so, 21 U.S.C. § 823; and (2) comply with a host of record keeping and other requirements designed to prevent the diversion of controlled substances from a legitimate purpose and forum to illegitimate ones. 21 U.S.C. § 842(a)(5). The regulations are contained at 21 C.F.R. §§ 1300 *et seq.* The Act provides for penalties of up to $25,000.00 for each and every violation of the Act and its regulations. 21 U.S.C. § 842(c)(1).

█ The Act imposes strict liability, and thus intent or state of mind is immaterial. *United States v. Green Drugs,* 905 F.2d 694, 698 (3d Cir.1990); *see also United States v. Queen Village Pharmacy,* 1990 WL 165907 (E.D.Pa.1990); *United States v. Barbacoff,* 416 F.Supp. 606 (D.D.C.1976) and *United States v. Williams,* 416 F.Supp. 611 (D.D.C. 1976). The *Green* court succinctly summarized the Act's regulatory scheme as follows:

Every registrant under the Controlled Substances Act engaging in the "manufacturer, distribution or dispensing of controlled substances" is required to "make a complete and accurate record of all stocks thereof on hand." 21 U.S.C. § 827(a)(1). Section 827(a)(3) likewise requires the registrant to maintain "a complete and accurate record of each … substance manufactured, received, sold delivered, or otherwise disposed." *Id.* § 827(a)(3). Such records must be maintained in strict accordance with regulations promulgated by the Attorney General and be available for inspection and copying by authorized officials for at least two years. *Id.* § 827(b). Failure to maintain the requisite records constitutes a violation of 21 U.S.C. § 842(a)(5), and subjects the offender to civil · or penal penalties, depending on whether the act was committed knowingly. *Id.* § 842(c). "Inadvertent" mistakes due to sloppy record keeping subject pharmacies and owners to fines; a "knowing" violation subjects them to criminal sanctions of imprisonment, fines, or both.

*Green,* 905 F.2d at 695–96. *See also United States v. Clinical Leasing Service, Inc.,* 759 F.Supp. 310, 311–13 (E.D.La.1990), *aff'd* 925 F.2d 120 (5th Cir.1991), *cert. denied,* 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149. Thus, whether defendant knew that the records were not being kept properly is immaterial. Furthermore, since the Act imposes strict liability, it is unreasonable to suggest that the DEA had a duty to inform the defendant that the records were not in compliance with the regulations.

█ The government's claims are based on defendant's failure to carry out duties placed upon the registrant. Stidham contends, in essence, that he is not the registrant and that he could not be the registrant because he is "non-medical personnel". The Act requires that "every person who manufactures, distributes or dispenses any controlled substance or proposes to engage in the manufacture, distribution, or dispensing of any controlled substance shall obtain an-

---

**2.** The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355 and 21

U.S.C. § 842(c)(1).

814

nually a registration issued by the Attorney General in accordance with the rules and regulations promulgated by him." 21 U.S.C. § 822(a). The regulations promulgated by the Attorney General require that persons engaged in "conducting a narcotic treatment program" must be registered, although "affiliated persons[,] [such as a stockholder or parent corporation,] who are not engaged in such activities are not required to be registered." 21 C.F.R. §§ 1301.21 & 1301.22.

In this case, the government considers the registrant to be Gulf Coast Drug Control Center, which Stidham owned either solely or in partnership with Dr. Henson.[3] As the Court interprets Stidham's defense, he believes that Henson was the registrant because he signed the registration application as "Medical Director" of Gulf Coast Drug Control Center. The application, however, was signed on behalf of the Gulf Coast Drug Control Center, which was the entity operating a narcotic treatment center. Moreover, there is nothing in the Act or the regulations that makes the registration requirement applicable solely to medical personnel. To the contrary, the regulations require that all persons involved in the manufacture, distribution and dispensing of controlled substances be registered, 21 C.F.R. § 1301.21, and defines persons to include "any individual corporation, government or governmental subdivision or agency, business trust, partnership, association, or other legal entity." 21 C.F.R. § 1301.02.

Section 842(a)(5) states that it is "... unlawful for any person ... to refuse or fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement invoice, or information required under this subchapter or subchapter II of the Chapter." *Id.* (emphasis added). The Gulf Coast Drug Control Center failed to comply with a number of § 842(a)(5)'s requirements and attendant regulations, and, therefore, de-

fendant Roland O. Stidham, as its owner or one of its owners is liable for these violations.

Indeed, as one court stated in discussing the standard for obtaining and inspection warrant under the Act:

The purpose of the enactment of the 1970 Act was to provide a system for the control of drug traffic and to prevent the abuse of drugs. The statutory scheme envisioned by the Act is one of control through record keeping. Any person who desires to shoulder the responsibility of engaging in the manufacture or distribution of these products subjects himself to the regulatory system laid down by the 1970 Act.

*United States v. Greenberg,* 334 F.Supp. 364, 366–67 (W.D.Pa.1971). The defendant, R.O. Stidham, owner of the clinic shouldered that responsibility and derived the benefits and profits from operating a methadone clinic. *See also United States v. Clinical Leasing Service, Inc.* 759 F.Supp. at 313–14 (holding that § 842(a)(5) pertains not only to registrants but also to "persons" which is defined as any individual, corporation, government or governmental subdivision or agency, business trust, partnership, association or other legal entity).

The defendant violated several provisions of the act and its regulations. First, defendant failed to maintain a dispensing log as required by 21 U.S.C. § 827(b) and 21 C.F.R. § 1304.28. Section 1304.28 of the Code of Federal Regulations provides as follows:

**§ 1304.28 Records for maintenance treatment programs and detoxification treatment programs.**

(a) Each person registered or authorized ... to maintain and/or detoxify controlled substance users in a narcotic treatment program shall maintain records with the following information for each narcotic controlled substance:

---

3. According to Dr. Henson's affidavit, he became involved in the clinic because Stidham promised to make him a partner in the business. Although Stidham never carried through on that promise, he represented to the DEA that he and Henson were co-owners. It is immaterial whether Stidham owned the business alone or in partnership

with Henson. In either circumstance, he is responsible for the clinic. *See, e.g., Head v. Henry Tyler Constr. Corp.,* 539 So.2d 196 (Ala.1988) (partners are jointly and severally liable under Alabama law). Dr. Henson has entered into a settlement with the United States with respect to his role in the clinic.

(1) Name of substance;

(2) Strength of substance;

(3) Dosage form;

(4) Date dispensed;

(5) Adequate identification of patient (consumer);

(6) Amount consumed;

(7) Amount and dosage form taken home by patient; and

(8) Dispenser's initials.

(b) The records required by paragraph (a) of this section will be maintained in a dispensing log at the narcotic treatment program site and will be maintained in compliance with § 1304.24 without reference to § 1304.03.

Defendant did not maintain a dispensing log and, therefore, was in violation of 21 U.S.C. § 827(b) (which requires certain records and authorizes the Attorney General to implement regulations setting forth what information shall be recorded in those records); and 21 U.S.C. § 842(a)(5) (which makes it unlawful for any person to fail to keep such a record, and which subjects him or her to a civil penalty of up to $25,000.00 for any such violation).

■ In addition, the defendant failed to record, at a minimum, a total of 16,877 doses of methadone, each and every failure constituting an individual violation of the Act and § 1304.28 of the Code of Federal Regulations. In addition, some 14 bottles of methadone equating to a minimum of 560 doses of methadone were unaccounted for, or another 560 violations of § 1304.28. Defendant argues that the DEA altered the records regarding one shipment of methadone to reflect that the clinic received 60 bottles of methadone when, in fact, the drug company's sales records reflect that only 30 bottles were shipped. If the evidence supported this argument, there would be a factual issue regarding the missing methadone. The evidence, however, does not support defendant's contention.

Defendant points to two pieces of evidence to support his argument. The first is the clinic's copy of an order form dated 2/10/92 wherein the clinic ordered 60 bottles of methadone. The second is a printout of orders filled by Durr Drug which indicates that on 2/10/92 Durr Drug shipped 30 bottles of methadone to the clinic. However, Agent Traub, who calculated the amount of missing methadone did not use the clinic's records to determine whether methadone was missing. Indeed, the clinic's records were incomplete (in part because they did not reflect the amounts actually received) and, therefore, could not be used to make such calculations.[4] Rather, the government's calculations were made by comparing the inventory of methadone at the clinic with Durr's records of the amount shipped.[5]

■ Next, defendant violated 21 U.S.C. §§ 827(b) and 842(a)(5) and 21 C.F.R. § 1301.72 by failing to properly secure methadone in the drug safe after clinic hours, which allowed for employee pilferage and diversion of methadone. Section 1301.72(a)(1) provides that Schedule II controlled substances must, at the minimum, be stored in a safe or steel cabinet when small amounts are involved.

■ Defendant also violated the Act by failing to notify the DEA of the theft or loss of methadone. Sometime in November or December of 1991, Dr. Henson and Mr. Stidham became aware that methadone appeared to be missing from the clinic. Someone from outside the clinic had been called in to audit records and receipts. Henson and Stidham were concerned that someone in the clinic was stealing methadone and placed a wiretap on the clinic's telephones. In addition, Stidham received a telephone call warning him that methadone wafers from the clinic were on the street. When the DEA searched the clinic in February 1992, they found fourteen bottles of methadone were missing. Neither

4. Among other things, the clinic failed to record the amount of methadone received. See discussion, *infra*.

5. In any event, defendant's evidence regarding the number of bottles ordered does not rebut

evidence of the number of bottles shipped. Furthermore, if Durr had shipped the 60 bottles ordered, rather than the 30 Durr's records reflect, then the number of missing bottles would have been 30, rather than 14.

Stidham nor Henson reported their concerns regarding missing methadone until after the clinic was closed.

Registrants are responsible for reporting to the DEA "any theft or significant loss of any controlled substance upon discovery of such theft or loss ..." 21 C.F.R. § 1301.74. The registrant is also required to "complete a DEA Form 106 regarding a theft or loss." *Id.* Loss or theft of missing substances must be reported "whether or not the controlled substances are subsequently recovered and/or the responsible parties are identified and action taken against them." *Id.* Thus, the Mr. Stidham, in failing to report the above matters, was in violation of 21 U.S.C. §§ 827(b), 842(a)(5) and 21 C.F.R. § 1301.74(c).

■ By failing to maintain copies of receipts from each shipments of methadone received from Durr Drugs, defendant violated 21 C.F.R. § 1305.09(e), 21 U.S.C. §§ 827(b) and 842(a)(5). When ordering a controlled substance, a registrant must submit Copy 1 and Copy 2 of each order form to the supplier and retain Copy 3 in his files. 21 C.F.R. § 1305.09(a). Once the item is received, the purchaser must "record on Copy 3 of the order form the number of commercial or bulk containers furnished on each item and the dates on which such containers are received by the purchaser." 21 C.F.R. § 1305.09(e).[6]

The records reveal that Gulf Coast received seventeen shipments of methadone. Pursuant to 21 C.F.R. § 1305.09(a), the clinic's files should have contained seventeen official forms (DEA Form 222); however, only eleven were found. In addition, the clinic's failure to record the number and dates of the items received as to each of the seventeen shipments amounts to seventeen additional violations of 21 C.F.R. § 1305.09(e).

■ Finally, the failure to maintain accurate records regarding the dispensing of methadone violated 21 C.F.R. § 1301.21, which provides:

(a) On and after May 1, 1971, every registrant required to keep records pursuant to § 1304.03 shall maintain on current basis a complete and accurate record of each such substance manufactured, imported received, sold, delivered, exported or otherwise disposed of by him, except that no registrant shall be required to maintain a perpetual inventory.

Because the defendant failed to account for some fourteen bottles of methadone containing a minimum of 560 doses of the controlled substance, he failed to maintain an accurate record of the methadone dispensed by the clinic.

In conclusion, the Court finds that defendant Roland Stidham, as the owner (or co-owner) of Gulf Coast Drug Control Center is liable for the violations the set forth above. Accordingly, the government's motion for partial summary judgment is hereby **GRANTED.**

■ The only issue remaining in this case is the amount of fine to be assessed against the defendant for these violations, and that is an issue for the Court to decide. *See Tull v. United States,* 481 U.S. 412, 425–27, 107 S.Ct. 1831, 1839–41, 95 L.Ed.2d 365 (1987); *see also Clinical Leasing,* 759 F.Supp. at 317. Therefore, the Court will enter a separate order at a future date setting this matter for hearing as to the amount of penalties to be imposed.

It is so **ORDERED.**

---

**6.** At the time of shipment, the seller retains Copy 1 of DEA Form 222 and sends Copy 2 to the DEA so that it can monitor the shipment of controlled substances to a particular registrant. *See* 21 C.F.R. § 1305.09(d).